# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-2352

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY FISHER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:08-cr-00161—**Lynn Adelman**, *Judge.*

No. 10-3124

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EDWARD DORSEY, SR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 2:09-cr-20003—**Michael P. McCuskey**, *Chief Judge.*

ARGUED FEBRUARY 15, 2011—DECIDED MARCH 11, 2011

Before ROVNER, WOOD, and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge*.  The Fair Sentencing Act of 2010 (FSA) might benefit from a slight name change: The Not Quite as Fair as it could be Sentencing Act of 2010 (NQFSA) would be a bit more descriptive. But whether the FSA should be amended to more closely resemble its name is a matter for Congress. We can do nothing about it at this time.

The FSA increased the drug quantities necessary to trigger mandatory minimum sentences under the Controlled Substances Act and the Controlled Substances Import and Export Act. Prior to the effective date (August 3, 2010) of the FSA, the amount of cocaine necessary to bring the mandatory minimum sentences into play was based on what is now viewed as the flawed 100:1 ratio of crack vs. powder cocaine. For crack cocaine, the FSA increased the amount from 5 to 28 grams for activating the five-year mandatory minimum term. For the ten-year mandatory minimum, the threshold amount jumped from 50 to 280 grams. But the problem, from the point of view of the two defendants in this case, is that the FSA is not retroactive. It applies only to defendants who are sentenced based on conduct that took place after August 3, 2010.

Anthony Fisher pled guilty in Wisconsin, in February 2010, to one count of conspiracy to distribute crack. A presentence report stated that he was responsible for between 150 and 500 grams of crack. It recommended a 140 to 175 months guideline range. Fisher disputed this, claiming he was responsible for only 50 to 150 grams of crack and the proper guideline range was 120 to 150

months. The district judge declined to resolve the quantity dispute and sentenced Fisher to the 120-month mandatory minimum based on 50 or more grams of crack. Judgment was entered on June 2, 2010. Fisher filed a notice of appeal the next day.

Fisher claims that the FSA should apply because his appeal was pending on August 3, 2010, when the Act went into effect. Fisher asks us to apply the FSA retro-actively to his sentence. However, as he acknowledged at oral argument, his case falls squarely within the ambit of our recent opinion in *United States v. Bell*, 624 F.3d 803 (7th Cir. 2010). In *Bell*, we were also dealing with a defendant who had been convicted and sentenced and had an appeal pending when the FSA went into effect. We found that the general federal savings statute, 1 U.S.C. § 109, applies to the FSA and prevents it from operating retroactively. 624 F.3d at 815.

Fisher asks us to rethink *Bell*. However, he makes this suggestion based not on case law, but on his own sug-gested interpretations of the FSA and the application of the savings statute thereto. We are not persuaded and decline to stray from our recent precedent in *Bell*. We further note that our sister circuits have likewise found that the savings statute bars retroactive application of the FSA. *See United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir. 2010); *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010).

The appeal of our other defendant, Edward Dorsey, presents a slight wrinkle because he was sentenced after the FSA went into effect. On June 3, 2010, Dorsey pled guilty to possessing 5.5 grams of crack cocaine with

intent to distribute, in Kankakee, Illinois, on August 6, 2008. Because he had a prior felony drug conviction, the mandatory minimum 10-year term was in play. Under the FSA, however, Dorsey would have had to possess at least 28 grams of crack in addition to the prior felony drug conviction to trigger the 10-year mandatory minimum. Dorsey was sentenced on September 10, 2010. At sentencing, the district judge declined to apply the FSA to Dorsey's case, saying, "in this case the crime that you pled guilty to was . . . two years before the President signed the legislation." Dorsey was sentenced to 120 months.

Dorsey argues that, even if the savings statute prevents retroactive application of the FSA, the relevant date for a retroactivity analysis is the date of sentencing, not the date of the commission of the criminal act, and therefore the FSA should have applied to him. Dorsey suggests that, in keeping with congressional intent and for reasons of fairness, we should distinguish someone in his situation from that of the defendant in *Bell*, and apply the FSA to all defendants sentenced after August 3, 2010.

In *Bell* we held that the savings statute prevents the FSA from "operating retroactively absent any indication from Congress. And since the FSA does not contain as much as a hint that Congress intended it to apply retroactively," we declined to apply it to Mr. Bell. 624 F.3d at 815. But Dorsey argues, rather creatively, that when considering applicability of a savings statute, we will apply the statute and deny retroactivity unless Congress suggests otherwise either by "express declaration

or necessary implication." *Great Northern Railway Co. v. United States*, 208 U.S. 452, 465 (1908). Dorsey then suggests that, although there is no express declaration here, there is necessary implication that the FSA must be applied retroactively—at least as to sentences imposed after August 3, 2010, regardless of when the criminal conduct took place.

Specifically, Dorsey points to the fact that the FSA expressly urged the Sentencing Commission to amend the guidelines on an emergency basis, and required the amendments to be adopted by November 1, 2010. He argues that this is evidence of the implicit will of Congress that the FSA be as speedily and widely implemented as possible. Further, he points to statements of various legislators urging the adoption of the FSA as the means to correct the long-standing unfairness in crack cocaine sentences, and urging the application of the FSA to all defendants who had not been sentenced as of passage of the FSA, regardless of whether their criminal conduct occurred before this date.

In weighing this as potential evidence of a necessary implication that Congress wanted the FSA to be applied retroactively, we are mindful of the pitfalls of relying on legislative history. Although we may look for statements which can "plausibly be read as reflecting any general agreement," *Landgraf v. USI Film Products*, 511 U.S. 244, 262 (1994), cherry-picked statements made by proponents of the legislation cannot be relied upon as indications of the will of Congress.

Debate surrounding the crack cocaine sentencing scheme and the infamous "100:1 ratio" has been raging

for years, and there is strong rhetoric to be found on either side. The FSA is compromise legislation and must be viewed as such. Given the long-standing debate surrounding, and high-level congressional awareness of, this issue, we hesitate to read in by implication anything not obvious in the text of the FSA. We believe that if Congress wanted the FSA or the guideline amendments to apply to not-yet-sentenced defendants convicted on pre-FSA conduct, it would have at least dropped a hint to that effect somewhere in the text of the FSA, perhaps in its charge to the Sentencing Commission. In other words, if Congress wanted retroactive application of the FSA, it would have said so.

Given the absence of any direct statement or necessary implication to the contrary, we reaffirm our finding that the FSA does not apply retroactively, and further find that the relevant date for a determination of retroactivity is the date of the underlying criminal conduct, not the date of sentencing.

We have sympathy for the two defendants here, who lost on a temporal roll of the cosmic dice and were sentenced under a structure which has now been recognized as unfair. However, "[p]unishment for federal crimes is a matter for Congress, subject to judicial veto only when the legislative judgment oversteps constitutional bounds." *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 664 (1974).

We close with one final observation. Because crack cocaine quantity is viewed as a sentencing factor rather than a charged element of the offense, it is possible that a defendant could be convicted for conduct taking place

both before and after August 3, 2010. Were this the case, any conduct committed after August 3, 2010 would necessarily be considered within the confines of the FSA. But Dorsey's sentence was based entirely on conduct that occurred two years prior to August 3, 2010. He can, therefore, not get the kind of relief that may be available to a defendant whose criminal conduct straddles August 3, 2010. A future defendant in that situation may very well be able to benefit, at least in part, from the FSA.

For these reasons, the judgments as to Fisher and Dorsey are AFFIRMED.