# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2352

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY FISHER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:08-cr-00161—**Lynn Adelman**, *Judge.*

No. 10-3124

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EDWARD DORSEY, SR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 2:09-cr-20003—**Michael P. McCuskey**, *Chief Judge.*

DECIDED MAY 25, 2011

Before ROVNER, WOOD, and EVANS, *Circuit Judges*.

PER CURIAM.   On March 23, 2011, the defendants-appellants Anthony Fisher (#10-2352) and Edward Dorsey (#10-3124) filed petitions for rehearing and rehearing en banc. The panel has voted to deny the petitions for rehearing. On April 5, 2011, an order was issued directing the government to file an answer to the petition for rehearing en banc filed by Edward Dorsey. The answer was filed on April 19, 2011. Subsequently, a vote was taken on the petition for rehearing en banc in appeal #10-3124. Chief Judge Easterbrook and Circuit Judges Posner, Flaum, Kanne, Rovner, Wood, Sykes and Tinder voted to deny the petition. Circuit Judges Williams and Hamilton voted to grant the petition.

Therefore, the petitions for rehearing and rehearing en banc filed on March 23, 2011 are denied.

WILLIAMS, *Circuit Judge*, with whom HAMILTON, *Circuit Judge*, joins, dissenting from the denial of rehearing en banc.

Edward Dorsey pled guilty to distribution of 5.5 grams of crack cocaine for conduct that occurred prior to the passage of the Fair Sentencing Act of 2010 ("FSA"). He was sentenced on September 10, 2010, after its enactment. The panel found that under the General Saving Statute,

1 U.S.C. § 109, the FSA was not "retroactive" to those whose sentences were pending at the time of the FSA's enactment, and that the relevant date for application of the FSA is the date of conduct. *United States v. Fisher*, 635 F.3d 336, 340 (7th Cir. 2011). Like many of the district courts currently addressing this issue around the country, I would find that the General Saving Statute cannot be read to preclude the application of the FSA to individuals in Dorsey's position.

We are the first circuit to address the question of whether individuals sentenced *after* the enactment of the FSA are entitled to the benefit of the statute. Given the five-year statute of limitations for offenses such as the one at issue, *see* 18 U.S.C. § 3282, adhering to a flawed view concerning the application of the General Saving Statute will require the district courts to continue administering sentences that have been acknowledged by Congress as unjust. While the number of people indicted for pre-FSA conduct will diminish over time, in fiscal year 2010, at least 78.8% of defendants sentenced for crack-cocaine offenses were sentenced for conduct involving five grams or more of the drug. United States Sentencing Commission 2010 Sourcebook of Federal Sentencing Statistics Tab 43.

## I.

The General Saving Statute provides that "[t]he repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly

provide." 1 U.S.C. § 109. The Supreme Court has said that the saving statute "cannot justify a disregard of the will of Congress as manifested either expressly or by necessary implication in a subsequent enactment." *Great No. Ry. Co. v. United States*, 208 U.S. 452, 465 (1908). In other words, where there is a "specific directive" that "can be said by fair implication or expressly to conflict with § 109," "there [would] be reason to hold that [the new statute] superseded § 109." *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 659 n.10 (1974) (citing *Great No. Ry. Co*, 208 U.S. at 465–66). The General Saving Statute does not apply in instances where, by "necessary implication, arising from the terms of the law as a whole," it is clear that "the legislative mind will be set at naught by giving effect to the [saving statute]." *Great No. Ry. Co.*, 208 U.S. at 465; *see also Hertz v. Woodman*, 218 U.S. 205, 217 (1910) (stating that the General Saving Statute is a "rule of construction . . . to be read and construed as part of all subsequent repealing statutes, in order to give effect to the will and intent of Congress"). "A subsequent Congress . . . may exempt itself from such requirements by 'fair implication'—that is, *without* an express statement." *Lockhart v. United States*, 546 U.S. 142, 148 (2005) (Scalia, J., concurring) (emphasis in original) (citing *Marrero*, 417 U.S. at 659-60 n.10; *Hertz*, 218 U.S. at 218)).

There is no need to "cherry pick," as the panel's opinion suggests, from the legislative history to find the necessary directive here since it is found in the language of the FSA itself. In section 8 of the FSA, Congress directed the United States Sentencing Commission ("USSC") to exercise "emergency authority," and stated that the USSC

"shall . . . promulgate the guidelines, policy statements, or amendments provided in this Act as soon as practicable, and in any event not later than 90 days after the date of enactment of this Act . . . and . . . make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law." 124 Stat. 2372, 2374 (2010). The USSC followed this directive and promulgated a temporary, emergency amendment to the sentencing guidelines consistent with the FSA on November 1, 2010, which became applicable to all defendants sentenced after that date, regardless of when they committed their crimes. *See* 18 U.S.C. § 3553(a)(4)(A)(ii) (stating that except in cases of remand, sentencing courts are to apply the guidelines "in effect on the date the defendant is sentenced"). Many district courts have found that this statutory directive is sufficient indication of Congress's intent to have the FSA apply to those individuals yet to be sentenced. *See, e.g., United States v. Watts*, ___ F. Supp. 2d ___, 2011 WL 1282542, at *11 (D. Mass. 2011) (collecting cases); *see also United States v. Douglas*, 746 F. Supp. 2d 220 (D. Me. 2010).

The panel recognized this argument, but then stated that Congress "could have dropped a hint" that it sought to apply the FSA to pending cases "in its charge to the Sentencing Commission." I see no hint that Congress intended otherwise. In that very charge, in fact, Congress ordered the USSC to exercise emergency powers to conform the guidelines to the FSA "as soon as practicable," and no later than ninety days, instead of waiting for the

Commission to promulgate new guidelines under existing procedures.[1]  When the FSA was enacted, Congress was undoubtedly aware of the default rule of applying amended guidelines to pending cases, which would require the application of a new 18:1 guideline ratio regardless of when the violation occurred. Section 8 of the FSA sought to promote "consistency" between the guidelines and the statute, which signals an intent to apply the FSA to pending cases just as the guidelines would be. Under the panel's interpretation, for many defendants currently being sentenced whose conduct occurred before the FSA was enacted, the sentencing court would calculate an 18:1 guideline ratio, but would have to apply a statutory 100:1 ratio. Oddly, under the panel's interpretation, of these defendants, the only ones who benefit from this "emergency authority" are the worst offenders, whose new guidelines range would be reduced to the statutory minimum. Congress's mandate in section 8 would not have made much sense if Congress did not intend the FSA to apply to defendants in Dorsey's situation because, regardless of what the Commission promulgated, the new guidelines would simply look to the old statutory minimums.

[1] The emergency amendments expire on November 1, 2011. 28 U.S.C. § 994(p); *Douglas*, 746 F. Supp. 2d at 223 n.17. On April 28, 2011, the Commission submitted to Congress amendments to the sentencing guidelines and official commentary, which become effective on November 1, 2011, unless Congress acts to the contrary. *See* 76 Fed. Reg. 24960 (May 3, 2011).

The panel did not explain why section 8 does not provide a "fair implication" under the Supreme Court's elaboration of what is required to supercede the General Saving Statute. Some district courts have, however, attempted to narrow the "fair implication" or "necessary implication" language that finds its origins in *Great Northern*. *See United States v. Young*, ___ F. Supp. 2d ___, 2011 WL 1042264, at *4 (E.D. Mich. 2011); *see also United States v. Santana*, ___ F. Supp. 2d ___, 2011 WL 260744, at *20 n.23 (S.D.N.Y. 2011). Contrary to what these courts have found, *Great Northern* does not stand for the proposition that a "direct contradiction" in the statute itself is required to find the fair or necessary implication sufficient to overcome the General Saving Statute.

In *Great Northern*, the Supreme Court held that certain language in the 1906 Hepburn Law repealing an older statute did not "expressly or by fair implication, conflict with the general rule established by [the General Saving Statute]," 208 U.S. at 466, such that new prosecutions for old conduct were barred, because the language at issue did not touch upon new prosecutions.[2] The court's view was "fortified" by a direct conflict between

---

[2] The Hepburn Law itself contained a saving provision stating that "all laws and parts of laws in conflict with the provisions of this act are hereby repealed, but the amendments herein provided for shall not affect causes now pending in courts of the United States, but such causes shall be prosecuted to a conclusion in the manner heretofore provided by law." *Great Northern*, 208 U.S. at 465.

*another* provision of the Hepburn Law and the defendants' contention that new prosecutions for pre-1906 conduct were abrogated by the new statute. *Id*. at 468. In other words, the defendants' contention that prosecutions under the old law were abated by the Hepburn Law was directly contradicted by another provision of that same law. In contrast, in this case, there is no "other" provision of the FSA that directly contradicts with Dorsey's position or warrants reading the FSA to prevent application of its terms to individuals yet to be sentenced. *Great Northern* simply does not support a narrowing of the "fair implication" language used by the Court. In fact, as noted above, the Supreme Court cases decided after *Great Northern* have continued to rely upon the "necessary" or "fair implication" language without mentioning the need for a "direct contradiction." *See Marrero*, 417 U.S. at 659 n.10 ("But only if § 1103(a) can be said by fair implication or expressly to conflict with § 109 would there be reason to hold that § 1103(a) superseded § 109."); *Lockhart*, 546 U.S. at 148 (Scalia, J., concurring) ("A subsequent Congress . . . may exempt itself from such requirements by 'fair implication'—that is, without an express statement."). Furthermore, there is no indication that the "fair implication" analysis in *Great Northern* ought to be limited to statutes with their own saving provisions.

There is, therefore, little rationale for limiting the "fair implication" language found in *Great Northern*, and none for not considering section 8 of the FSA to be such an implication. The panel's reading of section 8 would set "the

legislative mind . . . at naught by giving effect to the [saving statute]," *Great No. Ry. Co.*, 208 U.S. at 465, and prevent the consistency and conformity that the statute expressly seeks. As one district judge has noted, "[i]t is only by covering his eyes and plugging his ears that any fairminded person could avoid the conclusion that Congress intended, by 'fair implication,' to treat the statutory amendments . . . the same way it directed the Guidelines to be treated, that is, to mandate that the amended statutes be applied to all defendants coming before federal courts for sentencing." *Watts*, 2011 WL 1282542, at *14; *see also Douglas*, 746 F. Supp. 2d 220. I would therefore find that the Fair Sentencing Act is applicable to Dorsey as a result of section 8.

## II.

Dorsey also argued that a defendant in his position "incurs" a penalty at the time of his sentencing, and not at the time of conduct, such that the Saving Statute would not even apply to the case at hand. I believe this issue warrants review by the full court.

Section 841's elements are contained in subsection (a), while subsection (b) contains the considerations which determine the maximum and minimum sentence. 21 U.S.C. § 841; *United States v. Bjorkman*, 270 F.3d 482, 490 (7th Cir. 2001). We have consistently held that in the § 841 context, "drug type and quantity are not elements of the offense"; rather, they are factors to be considered at sentencing. *Bjorkman,* 270 F.3d at 490 (rejecting argument after *Apprendi* that drug quantity is an element of the

offense); *United States v. Gougis*, 432 F.3d 735, 745 (7th Cir. 2005); *United States v. Martinez*, 301 F.3d 860, 865 (7th Cir. 2002). "[A] statute that sets a mandatory minimum neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range available to it." *United States v. Krieger*, 628 F.3d 857, 863 (7th Cir. 2010) (quotation marks omitted); *see also Harris v. United States*, 536 U.S. 545, 567 (2002) (sentencing factor that triggers mandatory minimum merely limits the court's discretion in selecting penalty within statutory permissible range).

Under the panel's view, an individual could plead guilty to, or be convicted of, distribution of crack cocaine under § 841(a) for conduct occurring prior to August 2010, with no weight specified, but be subject to a statutory five-year mandatory minimum if the government proved at a later sentencing, by a preponderance of the evidence, that the weight of drugs involved in the charged conduct amounted to five grams, or ten years if the weight was shown to be fifty grams. *See, e.g., United States v. Rodriguez*, 67 F.3d 1312, 1324 (7th Cir. 1995). The panel does not discuss the legal implications of this result. It only suggests that if a conviction is based on charged conduct that occurred both before and after the enactment date, the post-enactment conduct would have to be considered in light of the FSA. *Fisher*, 635 F.3d at 340. This, however, does not address why the penalty is "incurred" at the time of the commission of the charged offense under the statute, when that mandatory

five or ten-year penalty can be based on evidence sub-mitted solely at sentencing.[3]

The penalty "incurred" argument Dorsey raised is different from the one we addressed in *United States v. Bell*, 624 F.3d 803 (7th Cir. 2010). In that case, the defendant argued that the statutory change in the FSA was proce-dural or remedial, and thus outside of the scope of the General Saving Statute. We found that "[n]o procedures or remedies were altered by the passage of the FSA," and that "the FSA's predominant purpose was to change the punishments associated with drug offenses." *Bell*, 624 F.3d at 815. This, however, does not foreclose the argument that the penalty is not "incurred" until the date of sentencing.

Dorsey's view that a penalty is "incurred" on the date of sentencing is in some tension with the way the Supreme Court has examined the term "prosecution" under specific statutory saving provisions, *see, e.g., Bradley v. United States*, 410 U.S. 605, 609 (1973) (finding that under Drug Abuse Prevention and Control Act of 1970,

---

[3] In *United States v. Jackson*, 835 F.2d 1195 (7th Cir. 1987), we upheld the life sentence of a defendant under 18 U.S.C. § 1202, which prohibited possession of weapons by career criminals, even though he had been sentenced after that statute's repeal by 18 U.S.C. §§ 922(g) and 924(e)(1). However, at that time, we held that the General Saving Statute applied because the latter legislation "simply altered the *elements* of the offense," *id*. at 1197 (emphasis added), and did not consider whether it would apply if a statute altered a sentencing factor.

"prosecution terminates only when sentence is imposed"); *Marrero*, 417 U.S. at 659 (also addressing 1970 Act, and finding that defendants already sentenced were not entitled to subsequently enacted parole eligibility due to statutory saving clause and General Saving Statute), with how other circuits have read the General Saving Statute, *see, e.g., United States v. Smith*, 354 F.3d 171, 175 (2d Cir. 2003) (noting that "sentencing is an integral part of the 'prosecution' of the accused, as that term is used in § 109, and therefore that § 109 saves sentencing provisions in addition to substantive laws"), and with how the Supreme Court has addressed "retroactivity" with respect to a change in law while a case is on direct appeal, *see Landgraf v. USI Film Products*, 511 U.S. 244 (1994) (not addressing the General Saving Statute, but finding that a "retroactivity" analysis in the context of the Civil Rights Act of 1991 focuses on whether a statute attaches new legal consequences to events completed before the statute's enactment date). However, it is this tension, and the panel's lack of reconciliation of that tension, that warrants the full court's review.

For these reasons, I respectfully dissent from the denial of Dorsey's petition for rehearing en banc.