**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 15, 2011
Decided July 11, 2011

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 10-2884 | Appeal from the<br>United States District Court for the |
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,* | Northern District of Illinois,<br>Eastern Division. |
| *v.* | No. 09 CR 30 |
| BRYAN CAMPBELL,<br>    *Defendant-Appellant*. | Matthew F. Kennelly,<br>*Judge*. |

**O R D E R**

Bryan Campbell brokered a meeting between a crack dealer and a potential customer. His stint as a middleman landed him a conviction for conspiracy to distribute a controlled substance. On appeal Campbell argues that the district court should have postponed his sentencing until the Fair Sentencing Act went into effect. We disagree; the court did not have the authority to postpone Campbell's sentencing to allow him to take advantage of a change in the law regarding sentences in crack cases. Campbell also contends that the district court ought to have sentenced him below his guidelines range using the powder-cocaine guidelines, as the court had done with his codefendant, the crack dealer. On this issue we conclude that the court did not sufficiently explain its refusal to use the same approach in sentencing Campbell, so we vacate Campbell's sentence and remand for additional explanation.

An acquaintance told Campbell that he was in the market for crack cocaine. Campbell agreed to put him in touch with a dealer named John Crafton, and the trio met at a barbershop, where a little over 100 grams of crack changed hands. Unfortunately for Campbell and Crafton, their "customer" was working for the FBI.

Campbell pleaded guilty to a conspiracy to distribute a controlled substance. *See* 21 U.S.C. §§ 846, 841(a)(1). Sentencing was set for late July 2010; Campbell asked to postpone the hearing until the Fair Sentencing Act was signed into law so he could "reap the possible benefits of the upcoming changes." The district court denied the request. The court calculated a total offense level of 27 and a criminal-history category of VI, which yielded an imprisonment range of 130 to 162 months. Campbell's lawyer proposed a sentence of 120 months, which at the time was the statutory minimum term for an offense involving at least 50 grams of crack. *See id.* § 841(b)(1)(A)(iii). The district court decided instead to impose a sentence of 130 months, at the low end of Campbell's guidelines range.

On appeal Campbell argues first that the district court committed constitutional error by refusing to postpone his sentencing until the Fair Sentencing Act went into effect. Campbell is wrong to assume that the district court could grant a continuance to allow him to take advantage of a change in the law. In fact the court could not: "[T]he power to grant or deny a continuance is abused when it is exercised not in order to manage a proceeding efficiently but in order to change the substantive principles applicable to a case." *United States v. Tanner*, 544 F.3d 793, 796-97 (7th Cir. 2008). Because Campbell requested a continuance solely "to reap the possible benefits of the upcoming changes in the law," the district court had no choice but to turn him down.

And in any event, the Fair Sentencing Act would not have applied to Campbell even if the district court had granted the continuance. A few weeks after Campbell filed his opening brief, this court rejected the same distinction he urges and held that the act does not apply retroactively to *any* defendant who committed his offense before the act became law, even if the defendant is not sentenced until after that day. *United States v. Fisher*, 635 F.3d 336, 340 (7th Cir. 2011), *reh'g en banc denied*, 2011 WL 2022959 (7th Cir. May 25, 2011). Campbell has not offered any persuasive reason why *Fisher* should be abandoned so soon after it was decided.[1] *See Tate v. Showboat Marina Casino P'ship*, 431 F.3d 580, 582-83

---

[1] The U.S. Sentencing Commission voted on June 30, 2011, to make its amendment to the federal sentencing guidelines that implements the Fair Sentencing Act of 2010 retroactive, effective November 1, 2011. *See* http://www.ussc.gov/Legislative_and_Public_Affairs/Newsroom/ Press_Releases/20110630_Press_release.pdf (last visited July 11, 2011). Unless Congress acts to

(continued...)

(7th Cir. 2005) (examining "considerations that a court should weigh in deciding whether to follow or to overrule a previous decision").

Campbell's other argument is that he should have received a below-guidelines sentence like his codefendant, Crafton. Crafton was sentenced to 151 months' imprisonment a week before Campbell received his 130-month term. The district court found that Crafton had participated in other drug deals that comprised part of the same course of conduct as the offense he had committed with Campbell; this relevant conduct pushed his drug quantity to at least 15 kilograms of crack, which produced a base offense level of 38. (Campbell's offense, by contrast, involved only the 100 grams of crack that he had arranged for his acquaintance to purchase from Crafton.) Because Crafton had accepted responsibility for his crime, the court then subtracted 3 levels to arrive at a total offense level of 35. Factoring in Crafton's criminal-history category of IV (which is less serious than Campbell's criminal-history category of VI), the court arrived at a guidelines range of 235 to 293 months. But the court decided to give Crafton a substantial break and sentenced him well below that range. To determine how low it should go, the court decided to calculate, as a benchmark, the guidelines range that would have resulted if Crafton's offense had involved 15 kilograms of *powder* cocaine instead of 15 kilograms of *crack*; essentially the court decided to sentence Crafton as if the sentencing guidelines' ratio of crack to powder cocaine was 1:1 instead of 100:1. The powder range turned out to be 151 to 188 months. After careful consideration, the court sentenced Crafton to the low end of that range.

Campbell argues that Crafton's below-guidelines term creates an "unwarranted disparity" forbidden by 18 U.S.C. § 3553(a)(6) because the "profound" difference in the way the court sentenced the codefendants was not explained and in fact cannot be justified. Instead, Campbell continues, the district court should have sentenced him as if his offense had involved powder cocaine rather than crack cocaine, just as it had done in Crafton's case. Of course the court could not *actually* sentence Campbell as if his offense had involved mere powder; his guidelines range then would have been just 41 to 51 months, and the court was forbidden by statute to sentence Campbell to a term lower than 120 months. But the court did have some room to impose a more lenient sentence before bumping up against the statutory limit. At issue, then, is the 10-month difference between the

---

[1](...continued)
disapprove the amendment, defendants who were sentenced above the mandatory minimums based on the old guidelines will be eligible to apply to the district court to have their sentences reduced. *See* 18 U.S.C. § 3582(c)(2).

130-month sentence the district court imposed on Campbell and the 120-month mandatory minimum.

Campbell is wrong to frame his argument in terms of § 3553(a)(6). That subsection speaks not to disparities among codefendants but rather to disparities in the sentences handed down across judges or districts. *United States v. Scott*, 631 F.3d 401, 405 (7th Cir. 2011); *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006); *see also Gall v. United States*, 552 U.S. 38, 54 (2007) (holding that district court "necessarily gave significant weight and consideration to the need to avoid unwarranted disparities" by properly calculating guidelines range). Nevertheless, Campbell's argument that the district court should have meted out a shorter term on account of the leniency shown to his codefendant is a legitimate challenge to raise on appeal. Section 3553(a) *does* permit a district court to "reduce one defendant's sentence because of another's lenient sentence—not *because* of § 3553(a)(6), but *despite* it." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009).

In this case, the district court did not explain a crucial choice it made in imposing Campbell's sentence: the decision not to use the powder-cocaine guideline as a benchmark, as the court had done for Crafton, the crack dealer for whom Campbell was the middleman. At Crafton's sentencing the court seemed to have grave doubt that the 100:1 ratio of crack to powder cocaine ought to be applied in *any* defendant's case; instead the court sentenced Crafton using a 1:1 ratio. When it came time to sentence Campbell, however, the district court rebuffed his request to be sentenced using a 1:1 ratio and instead returned to the 100:1 ratio. Our best guess is that this outcome was driven by differences in the codefendants' criminal backgrounds. Crafton hadn't previously spent much time in prison, the court observed. Campbell, in contrast, had fetched "progressively more severe sentences" for drug and gun crimes yet never seemed to learn his lesson. But we cannot be sure; the court's explanation is not sufficient for us to review Campbell's challenge on this issue. *See United States v. Panice*, 598 F.3d 426, 443-44 (7th Cir. 2010). Therefore we VACATE Campbell's sentence and REMAND the case with instructions to the district court to provide a more complete explanation for why it chose to sentence Campbell using a 100:1 ratio of crack to powder cocaine despite earlier sentencing his more culpable codefendant using a 1:1 ratio.