In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2535

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARCUS T. POWELL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 08-cr-30221—**Michael J. Reagan**, *Judge.*

ARGUED JUNE 8, 2011—DECIDED JULY 13, 2011

Before POSNER, KANNE, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* A jury convicted appellant Marcus T. Powell of two counts of distributing crack cocaine, and the district court sentenced him to 420 months' imprisonment for those offenses. Powell now claims that evidence offered against him regarding his other drug dealing activity was inadmissible, that the jury was allowed to hear testimony regarding his likely sentence if convicted, and that the court should not have instructed the jury on an aiding-and-abetting theory

of criminal liability. Powell also asks us to reconsider circuit precedent barring retroactive application of the Fair Sentencing Act of 2010. We affirm.

I. *The Facts*

On January 17, 2008, law enforcement officials directed confidential informant Darnell Yarbrough to contact Powell and arrange a purchase of crack cocaine. After calling Powell, Yarbrough proceeded to a residence in East St. Louis, Illinois, where he used money provided by law enforcement to purchase a quantity of crack cocaine. On January 30, Yarbrough again contacted Powell and arranged a second purchase of crack cocaine. Yarbrough then returned to the same residence in East St. Louis, where he again used money provided by law enforcement to purchase a quantity of crack cocaine. After each controlled buy, Yarbrough turned over the cocaine he purchased to law enforcement officers. Following these two controlled buys, Powell was arrested and charged with two counts of intentionally distributing five grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B).

At trial, the prosecution's star witness was Yarbrough, who testified that he had purchased cocaine from Powell on January 17 and January 30, 2008. During Yarbrough's testimony, the prosecution played for the jury the recordings of the January 17 telephone conversations between Yarbrough and Powell arranging the initial controlled buy. The prosecution also played for the jury video recordings Yarbrough secretly made

when he purchased the cocaine from Powell. Those video recordings show that a number of individuals were inside the residence at the time Yarbrough made the controlled buys.

The evidence at trial also included recordings of telephone calls Powell made from the Alton City Jail after his arrest. In those calls, Powell — apparently unaware that it is common practice to record prisoners' calls — admitted his guilt of the crimes with which he had been charged. In one call, Powell admitted that if he had not been arrested, he would still be on the street selling drugs. In another, Powell complained that Yarbrough had underpaid him for the January 17 sale, and he speculated that Yarbrough had recorded the drug sales using a camera hidden in a necklace. In yet another, Powell explained that he would rather be considered a drug smuggler than a drug dealer, and he bragged that "as much shit as I be doing . . . they ain't got me on [anything] but two . . . sales."

The jury convicted Powell on both counts of the indictment. At sentencing, the district judge characterized Powell as the most dangerous drug dealer he had ever encountered, an individual "devoid of a conscience" who manipulated the court system "in order to buy more time to intimidate witnesses from testifying." The district court also took note of the extraordinary measures necessary during trial and at sentencing to maintain order and to ensure the safety of the witnesses against Powell. Based on all of this, as well as Powell's leadership role in a large-scale drug distribution network, the court

deemed it necessary that Powell "be incarcerated until [he is] criminally impotent" and sentenced him to 420 months' imprisonment, a time the court estimated to be just short of the likely remainder of Powell's natural life. This appeal followed.

II. *Cumulative Error*

Powell's primary argument on appeal is that a number of evidentiary errors resulted, cumulatively, in the denial of his constitutional right to a fair trial. To succeed on this theory, Powell must show (1) that multiple errors occurred at trial; and (2) those errors, in the context of the entire trial, were so severe as to have rendered his trial fundamentally unfair. *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000). Only rarely will multiple insignificant errors result in sufficient prejudice to justify reversal; we take particular care "not to magnify the significance of errors which had little importance in the trial" merely because more than one such error occurred. *Id.* at 825. In conducting this analysis, we "examin[e] . . . the entire record, paying particular attention to the nature and number of alleged errors committed; their interrelationship, if any, and their combined effect; how the trial court dealt with the errors, including the efficacy of any remedial measures; and the strength of the prosecution's case." *Id.*

To show the multiple errors necessary under cumulative error analysis, Powell asserts that Yarbrough's statements about Powell's other drug dealing activity were all inadmissible under Federal Rule of Evidence 404(b).

At trial, Yarbrough testified that Powell had "fronted" him some cocaine in May 2007 because Yarbrough was low on cash at the time. Yarbrough also testified that, in March 2008, after the charged sales of cocaine, Powell was going out of town to pick up some cocaine and offered Yarbrough "extra cocaine for [his] money" if he paid in advance. Lastly, Yarbrough testified that he had called Powell on July 16, 2008, to discuss a possible purchase of crack cocaine. This brief telephone call was recorded, and the recording was played for the jury. The district court overruled Powell's objections to all of this testimony, instructing the jury that it could consider Yarbrough's statements only as evidence of Powell's intent.

The district court erred by admitting this evidence of Powell's other drug dealing activity as evidence of his intent to unlawfully distribute cocaine. Although Rule 404(b) generally allows evidence of other bad acts as proof of a defendant's intent, such bad acts may be admitted as evidence of a defendant's intent to distribute illegal narcotics only when that defendant has put his intent at issue. See *United States v. Hicks*, 635 F.3d 1063, 1070-71 (7th Cir. 2011). Distribution of cocaine is, by its very nature, "a general intent crime," the necessary intent for which "is not above or beyond that which can generally be inferred based on proof of the act (distribution) in question." *United States v. Manganellis*, 864 F.2d 528, 539 (7th Cir. 1988). After all, when a person knowingly exchanges a dime bag of cocaine for a handful

of cash, his intent is rarely in doubt.[1] For this reason, without a direct challenge to the prosecution's evidence of intent, such other bad acts are merely cumulative of direct evidence that a defendant distributed drugs on the dates charged in the indictment, and have little additional probative value on the issue of the defendant's intent for the charged crimes.[2]

At the same time, such other bad acts' potential for unfair prejudice is substantial. The prior acts used to show intent to distribute narcotics are often prior drug dealings, and it can be easy for jurors to slide across Rule 404(b)'s slippery boundary between proper consideration of intent and improper consideration of propensity. Because those prior acts have minimal probative value in the absence of a challenge to the evidence of intent, and because they are particularly susceptible to misuse, they are generally not admissible to show an intent to distribute drugs on the familiar ground

---

[1] This is in contrast with, for example, homicide crimes. When one person kills another, a wide variety of mental states — intent, recklessness, negligence — may be consistent with that act, making specific evidence beyond that of the act itself often necessary to show the killer's precise mental state.

[2] Two of the other acts at issue here occurred *after* Powell's charged drug sales. While Rule 404(b) does not restrict the evidence concerning other acts to events that took place before the alleged crime, the probative value of post-offense conduct may often be somewhat limited, depending on the circumstances. See *United States v. Anifowoshe*, 307 F.3d 643, 646-47 (7th Cir. 2002).

that evidence is inadmissible if its potential for unfair prejudice significantly outweighs its probative value. Only if the defendant puts his intent at issue, then, is it possible to present Rule 404(b) evidence regarding such intent, shifting the probative/prejudicial balance in favor of admission. See *Hicks*, 635 F.3d at 1070-71. Because Powell never put his intent at issue, the evidence of his other drug dealings with Yarbrough was not admissible under Rule 404(b).

Although Powell has managed to show that multiple errors occurred at his trial, those errors were harmless beyond any reasonable doubt. The evidence the government brought to bear against Powell — the recordings of the telephone calls arranging the initial purchase of cocaine, Yarbrough's testimony, the video recordings of each sale, and the recordings of Powell's telephone calls from jail — was overwhelming. The district court observed at sentencing that the evidence was so strong that "only 12 people unfit to serve as jurors could have found [Powell] not guilty." In light of the quantity and quality of evidence of Powell's guilt adduced at trial, we are confident that the relatively minor errors of which Powell complains did not have any effect on the jury's verdict.[3]

---

[3] Powell also complains that one government witness incorrectly referred to a man named Ricardo Mason as Powell's "co-defendant," and that the government presented testimony that Yarbrough's actions as a confidential informant had led Mason to plead guilty to drug charges. Even if we assumed

(continued...)

III. *Aiding and Abetting Instruction*

Over Powell's objection, the district court instructed the jury that anyone who aids in the commission of an offense may be found guilty of that offense if he knowingly associates with the criminal activity, participates in the activity, and tries to make it succeed. Powell argues that this instruction was erroneous because it was not supported by the evidence at trial and because the prosecution first requested this instruction only after two of its witnesses had already testified and been cross-examined.

We review the district court's decision to give an instruction on aiding and abetting, like all jury instructions, for an abuse of discretion, reviewing any underlying issues of law de novo. *United States v. Tavarez*,

---

[3] (...continued)

that this testimony was in error, that would not alter our harmless error analysis. For one thing, Powell immediately objected to this testimony, and the district court sustained both objections. Regarding Mason's guilty plea, the court cured any error when it instructed the jury to disregard Yarbrough's statement and explained that Mason's guilty plea "has nothing to do with this case." See, *e.g.*, *United States v. Fulk*, 816 F.2d 1202, 1205-06 (7th Cir. 1987) (noting that any error was cured when the district court sustained the defendant's objection and "immediately issued a cautionary instruction"). While the district court gave no such cautionary instruction when Yarbrough referred to Mason as a "co-defendant," it had no need to do so. Powell's sustained objection was, "There are no co-defendants."

626 F.3d 902, 904 (7th Cir. 2010). If Powell's indictment had referred to 18 U.S.C. § 2(a), which states the basic principle that a person who aids and abets a criminal offense is punishable as if he committed the offense himself, Powell could not complain about an instruction informing the jury as much. *United States v. Robinson*, 956 F.2d 1388, 1394-95 (7th Cir. 1992). The indictment in this case made no such reference to section 2(a), but because section 2(a) does not create a separate offense, but merely "makes those who aided and abetted a crime punishable as principals," *United States v. Galiffa*, 734 F.2d 306, 312 (7th Cir. 1984), an instruction on aiding and abetting may be given "so long as the evidence warrants the instruction and no unfair surprise results," *United States v. Ruiz*, 932 F.2d 1174, 1180 (7th Cir. 1991).

The instruction on aiding and abetting was warranted so long as some evidence indicated that Powell associated himself with the drug sale, participated voluntarily in it, and tried to make it succeed. See *United States v. Aldaco*, 201 F.3d 979, 989 (7th Cir. 2000) (noting that court of appeals will not disturb jury instructions that have at least some support in the record); *United States v. Wimberly*, 79 F.3d 673, 676 (7th Cir. 1996) (same); see also *United States v. Heath*, 188 F.3d 916, 921 (7th Cir. 1999) (describing classic elements of aiding and abetting). The evidence at trial showed exactly that: even if Powell did not personally hand the cocaine to Yarbrough, he arranged the sale and prepared the crack cocaine himself to reassure Yarbrough of its quality. That is more than enough evidence to support an instruction on aiding and abetting.

Regarding unfair surprise, Powell admits that his trial strategy was "to suggest that [he] was not guilty because he was not a principal in the drug sales charged." Having adopted this strategy, Powell cannot claim that he was unfairly surprised by the government's request for an instruction on aiding and abetting. See *United States v. Smith*, 727 F.2d 214, 218 (2d Cir. 1984) (finding claim of unfair surprise "incredible," given that the instruction was requested in response to the defendant's allegation that another individual "actually committed" the crimes charged); see also *United States v. Cooper*, 375 F.3d 1041, 1051 (10th Cir. 2004) ("When defense counsel made the tactical decision to suggest a second individual was involved in the robbery, he sacrificed the argument that [the defendant] was unfairly surprised by a subsequent aiding and abetting instruction. It is irrelevant that [the defendant] alone was charged."). The district court did not abuse its discretion by instructing the jury on aiding and abetting.[4]

---

[4] We question whether it is ever possible for a defendant to be unfairly surprised by an aiding and abetting instruction. Neither Powell nor we have found any published cases finding such unfair surprise. (The one case Powell cites on the issue is entirely off point.) Aiding and abetting is not a separate crime but a fundamental principle of criminal liability, and every competent member of the defense bar should be aware of it.

IV. *Motion for Mistrial*

Powell further contends that the district court should have granted his request for a mistrial. In one of the recorded telephone calls, Powell explained that the two cocaine sales with which he was charged were "petty," but that if he had been caught later, the prosecution "woulda been trying to bury" him for all the drug sales he would have made during that time. After this recording was played for the jury, a prosecution witness explained that Powell was saying that, if the government "had continued the investigation for eight years" longer, it would have had "a lot more crack cocaine" and Powell "would be looking at a substantial amount of time." Powell immediately moved for a mistrial, claiming that this testimony implied that "he is not looking at all that much time if [found] guilty." Although the district court agreed with Powell that "any indication as to what the potential sentence in this case would be . . . is improper," it denied Powell's motion on the grounds that the witness's statement was "a fair comment on what [Powell] had said and [a] fair interpretation." Instead, the district court instructed the jury that Powell's potential prison sentence was irrelevant and could not be taken into consideration when reaching its verdict.

We review the district court's denial of Powell's motion for a mistrial for an abuse of discretion. *United States v. Collins*, 604 F.3d 481, 489 (7th Cir. 2010). A mistrial is appropriate when "an event during trial has a real likelihood of preventing a jury from evaluating the evidence fairly and accurately, so that the defendant has

been deprived of a fair trial." *United States v. Tanner*, 628 F.3d 890, 898 (7th Cir. 2010), quoting *Collins*, 604 F.3d at 489. In light of the district court's actions in sustaining the objection and instructing the jury to disregard the irrelevant information, we are confident that this testimony had no such effect on the jury. In essence, Powell's argument is that he was irrevocably prejudiced because the jury learned that the penalties that he faced for the two charged sales were relatively small when compared to the prison time Powell would have faced had he not been apprehended before he could sell more drugs. But the connection between the quantity of drugs sold and the sentence imposed is unlikely to surprise any person competent to serve on a jury. The jury was not rendered unable to deliberate fairly on the merits of Powell's case merely because it heard and was told to disregard this legal truism. The district court acted well within its discretion by denying Powell's motion for a mistrial and relying instead on a curative instruction. See, *e.g.*, *United States v. Ferguson*, 935 F.2d 1518, 1528 (7th Cir. 1991) (holding that curative instruction was sufficient to guarantee defendant a fair trial, rendering a mistrial inappropriate).

V. *Retroactive Application of the Fair Sentencing Act*

Finally, Powell argues that his sentence was imposed in violation of the Fair Sentencing Act of 2010, which "amended the Controlled Substances Act and Controlled Substances Import and Export Act by resetting the drug quantities required to trigger mandatory minimum sen-

tences." *United States v. Bell*, 624 F.3d 803, 814 (7th Cir. 2010). Because Powell was sentenced on June 23, 2010, before President Obama signed the Act into law on August 3, 2010, the Act has no application here unless it applies retroactively to sentences imposed before its date of passage. Powell argues for the Act's retroactive application to his case.

In response, the government asks us to limit our review to plain error because "Powell did not raise this issue [before the district court] even though the legislation that eventually became the Fair Sentencing Act . . . was introduced on October 15, 2009, before Powell's sentencing." We decline this invitation. Although we will review arguments not made to the district court for plain error even if those arguments were rendered futile by precedent in existence at the time of trial, see, *e.g.*, *United States v. Paladino*, 401 F.3d 471, 483-84 (7th Cir. 2005) (explaining our plain error review of sentences imposed before the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005)), to say that an argument is futile under court precedent, which may be reevaluated at any time at a party's request, is not the same as saying that an argument is futile because it is based on the language of a proposed statute not yet enacted as law. After all, no federal court has the power to unilaterally reduce the statutory penalties for the sale of crack cocaine when Congress has not enacted legislation to do so. See, *e.g.*, *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 664 (1974) ("Punishment for federal crimes is a matter for Congress, subject to judicial veto only when the legislative judgment oversteps constitutional bounds."). And it makes little

sense to say that, by failing to request relief from the district court that *no* court had the power to grant, a defendant forfeited that request on appellate review. Plain error review is inappropriate in this case, and we review Powell's claim de novo, as we would any other question of law affecting sentencing. See, *e.g.*, *United States v. Hall*, 608 F.3d 340, 346 (7th Cir. 2010).

Turning to the merits of Powell's argument, we have already held that the Fair Sentencing Act does not apply retroactively to sentences imposed before that Act was signed into law. *Bell*, 624 F.3d at 814. Every circuit to address this issue has reached the same conclusion. *United States v. Bullard*, 2011 WL 1718894, at *10-11 (4th Cir. May 6, 2011); *United States v. Goncalves*, 2011 WL 1631649, at *5-7 (1st Cir. April 28, 2011); *United States v. Doggins*, 633 F.3d 379, 384 (5th Cir. 2011); *United States v. Reevey*, 631 F.3d 110, 115 (3d Cir. 2010); *United States v. Diaz*, 627 F.3d 930, 931 (2d Cir. 2010) (per curiam); *United States v. Lewis*, 625 F.3d 1224, 1228 (10th Cir. 2010); *United States v. Brewer*, 624 F.3d 900, 909 n.7 (8th Cir. 2010); *United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir. 2010) (per curiam); *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010). We recently declined an invitation to overturn *Bell*. *United States v. Fisher*, 635 F.3d 336, 338 (7th Cir. 2011). We do so again today.[5]

---

[5] Two judges dissented from this court's decision not to rehear *Fisher* en banc, arguing that the Fair Sentencing Act should apply to defendants who, unlike Powell, were sentenced *after* that Act's passage. *United States v. Fisher*, ___ F.3d ___, 2011 WL

(continued...)

Defendant Powell's convictions and sentence are AFFIRMED.

---

[5] (...continued)
2022959 (7th Cir. May 25, 2011) (Williams, J., dissenting from denial of rehearing en banc).

---

7-13-11