NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 8, 2011
Decided January 17, 2012

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-2175

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 09-CR-248 |
| FAYZELL MOSLEY, JR., *Defendant-Appellant*. | Lynn Adelman, *Judge.* |

**O R D E R**

Fayzell Mosley, Jr., and other gang members sold crack cocaine from 2006 to 2009. He pleaded guilty to conspiracy, 21 U.S.C. §§ 846, 841(a)(1) (2006), and because the amount of crack was at least 50 grams, he faced a statutory minimum sentence of 120 months under the governing version of Title 21, *id.* § 841(b)(1)(A). Mosley cooperated with the government, however, and in return the prosecutors released him from the minimum by moving under 18 U.S.C. § 3553(e) to reduce his sentence for providing substantial assistance. The district court sentenced him to 77 months. On appeal, Mosley argues that he should be resentenced based on the higher drug-quantity thresholds for mandatory minimums established by the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372.

Mosley was a member of the Racine Vice Lords, a street gang dealing drugs in Racine, Wisconsin. Mosley worked with two other members, Tyrann Mosley (Fayzell's

cousin) and Marquan Hill, and on multiple occasions in 2007 and 2008 they sold crack to government informants.  All three were indicted.

On November 24, 2010, Mosley pleaded guilty.  In his plea agreement, he admitted that the conspiracy involved at least 50 grams of crack and 5 kilograms of powder cocaine. A probation officer, in a presentence investigation report, recommended a guidelines imprisonment range of 140 to 175 months, based on a total offense level of 29 and a criminal-history category of V.  The probation officer "conservatively estimated" that Mosley was responsible for 804 grams of crack.  That total includes almost 213 grams that he personally accepted from suppliers and another 581 grams received by Tyrann Mosley.

At sentencing the district court asked defense counsel whether Mosley had any objection to the presentence report.  Counsel said no but suggested that the drug weight of 804 grams, although "correctly calculated" under the guidelines, "perhaps overstates Mr. Mosley's actual culpability."  That was so, according to counsel, because Tyrann Mosley had accepted delivery of the lion's share of the crack.  Without objection, the court then adopted the proposed facts and guidelines calculations in the presentence report.  The court concluded that factors made pertinent by 18 U.S.C. § 3553(a), including the "crack/powder disparity" and a desire to maintain consistency between Mosley's sentence and those of his coconspirators, justified a below-guidelines sentence.  But the court recognized that in light of *United States v. Johnson*, 580 F.3d 666, 672–73 (7th Cir. 2009), only Mosley's substantial assistance could justify going below the 120-month statutory minimum.  In the court's view, factors other than Mosley's assistance were enough to reduce his sentence to a point equivalent with a total offense level of 27.  Then, based on the government's representation that Mosley had provided substantial assistance, the court decided that he deserved an additional reduction equivalent to five offense levels. Altogether these adjustments, the court reasoned, would make a prison term of 77 to 96 months appropriate, and the court chose 77.  That term is 42 months less than what the government recommended in its substantial-assistance motion.

Now for the first time on appeal, Mosley contends that the district court erred in adopting the probation officer's drug-quantity calculation to establish the 120-month statutory minimum.  He concedes that, in light of our decision in *United States v. Fisher*, 635 F.3d 336 (7th Cir. 2011), *cert. denied*, 80 U.S.L.W. 3317 (2011), this perceived error would be harmless.  *Fisher* holds that the FSA does not apply to any offense committed before that legislation was enacted in August 2010, *id.* at 340, so even the 223 grams of crack that Mosley insists is the correct drug quantity would be enough to trigger the 120-month minimum.  *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2006).

After oral argument in this appeal, the Supreme Court granted certiorari to decide whether the FSA applies to all defendants sentenced after its enactment.  *See Dorsey v.*

*United States*, 80 U.S.L.W. 3311 (2011). If the holding of *Fisher* is overturned, says Mosley, then the district court's purported error would not be harmless because 223 grams is below the 280 needed after the FSA to trigger a 120-month minimum; only the 60-month minimum would apply. See 21 U.S.C. § 841(b)(1)(A)(iii), (B)(iii) (2006 & Supp. IV 2010). Then on remand, Mosley continues, the district judge might give him an even shorter sentence based on the 60-month minimum.

But even if *Fisher* is reversed, Mosley has waived his argument that the drug quantity was miscalculated. An objection is waived when it is withheld for strategic reasons. *See United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2008). Mosley insists that his lawyer (who also represents him in this court) made a "classic negligent omission" and had no strategic objective in not objecting to the district court's adoption of the drug quantity in the presentence report to calculate the mandatory minimum.

The strategy in not objecting at the hearing was not "cowardly"—as Mosley's counsel insisted at oral argument—nor was it accidental. Before the sentencing hearing Mosley already had signed a plea agreement admitting responsibility for five kilograms of cocaine. Mosley's admissions in his plea agreement and his lawyer's silence at the sentencing hearing were important parts of a quid pro quo. For the government, the admissions ensured that he accepted his guilt and the applicability of the 120-month minimum even if Congress retroactively raised the necessary amount of crack, because responsibility for the distribution of five kilograms or more of cocaine triggers a 120-month minimum even after the passage of the FSA. *See* 21 U.S.C. § 841(b)(1)(A)(ii)–(iii) (2006 & Supp. IV 2010). In return, Mosley received a § 3553(e) motion allowing a sentence below that minimum. It is not far-fetched to assume that this arms-length plea agreement tacitly required that Mosley not object to the applicability of the statutory minimum at sentencing, and so his silence constituted a strategic waiver.

But even if the question is forfeited, rather than waived, Mosley has not identified any error, let alone plain error, in the drug calculation. He argues that the district court never addressed whether he reasonably could have foreseen his coconspirators' drug sales and so, under *United States v. Pineda-Buenaventura*, 622 F.3d 761 (7th Cir. 2010), the case must be remanded for clarification.

But *Pineda-Buenaventura* requires remand only when a sentencing judge makes a finding that is inconsistent with the sentence imposed, and there was no inconsistency here. *See id*. at 766. Mosley sees inconsistency in the court's determination that he is responsible for just over 804 grams of cocaine, even though much of that quantity was "attributable to" one of Mosley's coconspirators. But in calculating drug quantity for purposes of assigning *statutory*, rather than guidelines penalties, a court must apply the *Pinkerton* standard and hold a defendant responsible for the acts of coconspirators that were undertaken to further

the conspiracy and were foreseeable to the defendant. *See Pinkerton v. United States*, 328 U.S. 640, 648 (1946); *United States v. Smith*; 223 F.3d 554, 566–67 (7th Cir. 2000); *United States v. Rodriguez*, 67 F.3d 1312, 1324 (7th Cir. 1995).  Although the district judge never specifically commented on the foreseeability of his coconspirator's dealings, he implicitly found foreseeability by adopting the facts and guidelines calculations in the presentence report. Those calculations were created by a probation officer who applied U.S.S.G. § 1B1.3(a)(1)(B). The § 1B1.3(a)(1)(B) standard holds defendants responsible for the actions of other participants when those actions were both reasonably foreseeable to the defendant and within the scope of the jointly undertaken criminal activity.  The *Pinkerton* standard is actually broader than § 1B1.3(a)(1)(B), and, by definition, includes any conduct that would trigger responsibility under § 1B1.3(a)(1)(B). *See United States v. Fox*, 548 F.3d 523, 532 (7th Cir. 2008); *United States v. Soto-Piedra*, 525 F.3d 527, 531 (7th Cir. 2008).  Thus the district court's adoption of the probation officer's application of § 1B1.3(a)(1)(B) was also an implicit finding of foreseeability under *Pinkerton*, and there was therefore no inconsistency in holding Mosley accountable for the drug purchases of his coconspirator.

AFFIRMED.