[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 6, 2011
JOHN LEY
CLERK

No. 10-14662
Non-Argument Calendar

_____

_____

D.C. Docket No. 1:10-cr-20236-AJ-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CARMELINA VERA ROJAS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 6, 2011)

Before WILSON, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

We *sua sponte* modify our previous opinion in this appeal to reflect recent

developments in the law of the First and Seventh Circuits. *See United States v.*

*Fisher*, 635 F.3d 336, 340 (7th Cir. 2011); *United States v. Douglas*, No. 10-2341, 2011 WL 2120163 (1st Cir. May 31, 2011).

The issue in this appeal is whether the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372 (2010), applies to defendants who committed crack cocaine offenses before August 3, 2010, the date of its enactment, but who are sentenced thereafter. We conclude that it does.

In May 2010, Carmelina Vera Rojas pleaded guilty to one count of conspiring to possess with the intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and two counts of distributing 5 grams or more of cocaine base, in violation of § 841(a)(1). Her sentencing was scheduled for August 3, 2010, which as it so happened, was the date on which President Obama signed the FSA into law. The district court granted the parties a continuance to determine whether Vera Rojas should be sentenced under the FSA. After considering the parties' arguments, the district court concluded that the FSA should not apply to Vera Rojas's offenses; in September 2010, the court sentenced Vera Rojas to ten years' imprisonment.

On appeal, Vera Rojas argues that the district court erred in refusing to apply the FSA to her sentence. Because she had not yet been sentenced when the FSA was enacted, Vera Rojas believes that she should benefit from the FSA's

provision raising the quantity of crack cocaine required to trigger a ten-year mandatory minimum sentence. Further, Vera Rojas contends that the FSA falls within recognized exceptions to the general savings statute, 1 U.S.C. § 109. Relying in large part on the general savings statute, the government contends that Congress's omission of an express retroactivity provision requires that the FSA be applied only to criminal conduct occurring after its August 3, 2010, enactment.

We conclude that the FSA applies to defendants like Vera Rojas who had not yet been sentenced by the date of the FSA's enactment. The interest in honoring clear Congressional intent, as well as principles of fairness, uniformity, and administrability, necessitate our conclusion. Accordingly, we reverse and remand to the district court for re-sentencing.

## DISCUSSION

We review *de novo* the legal question of whether the FSA applies to defendants who had not been sentenced by the date of the FSA's enactment. *See United States v. Olin Corp.*, 107 F.3d 1506, 1509 (11th Cir. 1997).

### 1. *The Fair Sentencing Act of 2010*

The preamble to the FSA describes it as "[a]n Act To [sic] restore fairness to Federal cocaine sentencing." The FSA sought to reduce the disparity between federal criminal penalties for crack cocaine and powder cocaine offenses by

lowering the gram-penalty ratio from 100:1 to 18:1. *United States v. Douglas*, 746 F. Supp. 2d 220, 222, 224 (D. Me. 2010), *aff'd*, 2011 WL 2120163 (1st Cir. May 31, 2011). To this end, the FSA amended the Controlled Substances Act and Controlled Substances Import and Export Act by raising the drug quantities required to trigger mandatory minimum sentences. *See United States v. Bell*, 624 F.3d 803, 814 (7th Cir. 2010). Further, the FSA provided the Sentencing Commission with the emergency authority to promulgate all necessary amendments to the Sentencing Guidelines within 90 days of the FSA's August 3, 2010, enactment. FSA § 8, Pub. L. No. 111-220. Specifically, the Sentencing Commission was charged with "mak[ing] such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law." *Id.* The consequent amendments to the Sentencing Guidelines became effective no later than November 1, 2010.

Under the FSA, a ten-year mandatory minimum applies to first-time trafficking offenses involving 280 grams or more of crack cocaine, while a five-year mandatory minimum applies to first-time trafficking offenses involving 28 grams or more of crack cocaine. 21 U.S.C. § 841(b)(1)(A)(iii), (b)(1)(B)(iii). Thus, the FSA amended the Anti-Drug Act of 1986 to lower the mandatory

minimum sentence for first-time trafficking offenses involving between 50 and 280 grams of crack cocaine from ten years to five years. *Compare* § 841(b)(1)(A)(iii) (2006), *with* § 841(b)(1)(A)(iii) (2010). The FSA is silent as to whether it applies to all criminal *sentencings* taking place after its enactment or, conversely, to only criminal *conduct* occurring after its enactment.

The district court sentenced Vera Rojas in September 2010 for conspiring with intent to distribute 71.8 grams of crack cocaine, among other offenses. If the court had sentenced Vera Rojas under the FSA, her offenses would have been insufficient to trigger the ten-year mandatory minimum sentencing provision. For the following reasons, we conclude that Vera Rojas's sentence is subject to the FSA's five-year mandatory minimum provision.

2.    *Case Law*

Vera Rojas argues that this Court's statement in *United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir. 2010) (per curiam)—"because the FSA took effect in August 2010, after appellant committed his crimes, [the general savings statute] bars the Act from affecting his punishment"—was merely dicta and is not controlling precedent. We need not consider this argument because, in any event, *Gomes* does not apply here. The record reveals that Gomes was indicted in July 2009 and sentenced in March 2010—nearly five months before the FSA was

5

signed into law. The issue before the Court therefore was whether the FSA applied retroactively to lighten the defendant's *existing* sentence.

This appeal presents a different issue. Vera Rojas's circumstances require that we determine whether the FSA applies to a defendant who had not been sentenced when the law was enacted. The government cites published opinions from the Sixth, Seventh, Eighth, and Tenth Circuits, ostensibly in support of its proposition that "[e]very circuit court to have addressed the issue has concluded that the FSA may not be applied retroactively." Like *Gomes*, each of those cases involved a defendant who had been charged, convicted, and sentenced before the effective date of the FSA; those defendants were arguing for the first time on appeal that the FSA should apply retroactively to a previously imposed sentence. *See United States v. Carradine*, 621 F.3d 575, 577–78, 580 (6th Cir. 2010) (defendant indicted in July 2005 and sentenced in January 2008); *Bell*, 624 F.3d at 814 (Seventh Circuit stating that "[i]f Bell were sentenced today under the FSA, his distribution of 5.69 grams of crack cocaine would be insufficient to trigger the mandatory minimum sentencing provisions"); *United States v. Brewer*, 624 F.3d 900, 909 n.7 (8th Cir. 2010) (stating that the defendant first submitted a letter requesting re-sentencing under the FSA on August 27, 2010, where the record indicates that defendant was originally sentenced in November 2009); *United*

*States v. Lewis*, 625 F.3d 1224, 1228 (10th Cir. 2010) ("[The FSA] is not, however, retroactive and thus does not apply to this case.  It does, on the other hand, relegate this case to a relatively short shelf-life, inasmuch as defendants *being sentenced henceforth* will be sentenced under a different applicable ratio." (emphasis added)).  *But see United States v. Fisher*, 635 F.3d 336, 340 (7th Cir. 2011) (holding that the relevant date for the FSA "is the date of the underlying criminal conduct, not the date of sentencing," but stating, "[w]e have sympathy for the two defendants here, who lost on a temporal roll of the cosmic dice and were sentenced under a structure which has now been recognized as unfair").

We do not disagree with our sister circuits in one major sense—absent further legislative action directing otherwise, the general savings statute prevents a defendant who was sentenced prior to the enactment of the FSA from benefitting from retroactive application.  Further, we share in the well-reasoned view of the First Circuit that Congress intended for the FSA to apply immediately.  *See Douglas*, 2011 WL 2120163, at *4 ("It seems unrealistic to suppose that Congress strongly desired to put 18:1 guidelines in effect by November 1 even for crimes committed before the FSA but balked at giving the same defendants the benefit of the newly enacted 18:1 mandatory minimums.").

    3.     *The Savings Clause of 1 U.S.C. § 109*

The government argues that Congress did not intend for the FSA to apply to defendants like Vera Rojas, as a contrary conclusion would render the general savings statute, 1 U.S.C. § 109, a nullity. Vera Rojas, on the other hand, contends that § 109 does not apply to the FSA, because sentencing some defendants under the old statute would frustrate the clearly evinced goals of Congress.[1]

The relevant clause of the general savings statute provides:

> The repeal of any statute shall not have the effect to release or extinguish any penalty . . . incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty . . . .

§ 109. Stated another way, if § 109 applies to the FSA, the FSA cannot "release or extinguish" the penalty Vera Rojas would have received under the old version of 21 U.S.C. § 841(b)(1)(B)(iii). For the reasons explained below, we conclude that § 109 does not "save" the older mandatory minimum sentence for a defendant who had not been sentenced by the date the FSA was enacted.

Over a hundred years ago, the Supreme Court explained that the general savings statute "cannot justify a disregard of the will of Congress as manifested,

---

[1] Citing *United States v. Kolter*, 849 F.2d 541, 544 (11th Cir. 1988), Vera Rojas also argues that "the FSA did not release or extinguish the penalty for crack cocaine," but that it merely "redefined the classes of persons to whom the minimum mandatories apply to remedy the defects in the 1986 law." The Seventh Circuit recently rejected the same argument. *See Bell*, 624 F.3d at 814–15. However, we need not consider it here because we resolve Vera Rojas's appeal on other grounds.

8

either expressly or by necessary implication, in a subsequent enactment." *Great N. Ry. Co. v. United States*, 208 U.S. 452, 465 (1908); *see also Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 659 n.10 (1974) ("[O]nly if [the repealing statute] can be said by fair implication or expressly to conflict with § 109 would there be reason to hold that [the repealing statute] superseded § 109."). Indeed, the Supreme Court has "made clear" that a savings provision "cannot nullify the unambiguous import of a subsequent statute. . . . A subsequent Congress . . . may exempt itself from [express-provision] requirements by 'fair implication.'" *Lockhart v. United States*, 546 U.S. 142, 148 (2005) (Scalia, J., concurring). Where Congress's intent for a new statute to supersede a prior one is clear, it is not required to use "magical" words to do so. *Id.* at 145 (majority opinion).

The government cites *Marrero* for the proposition that § 109 bars the application of the FSA to Vera Rojas's case. There, the Supreme Court applied § 109 to reject the claim that a new statute loosening parole eligibility should be applied to those who committed their crimes before the new statute's enactment. 417 U.S. at 659–64. But *Marrero* is not on-point: the repealing statute in that case had its own savings clause that specifically sought to preserve the harsher penalty for prosecutions initiated before its effective date. *Id.* at 656 n.4.

9

Unlike the statute at issue in *Marrero*, the FSA is silent as to whether the harsher mandatory minimums should be preserved for defendants whose cases were pending on the date of its enactment. However, the necessary and fair implication of the FSA is that Congress intended the Act to apply to all sentencings going forward, because a contrary conclusion would be logically inconsistent and would achieve absurd results: The Sentencing Reform Act of 1984 expressly states that the governing Sentencing Guidelines are those in effect on the day a defendant is sentenced. 18 U.S.C. § 3553(a)(4)(A)(ii). But under the government's rationale, courts could sentence Vera Rojas and other defendants in her position under the old, higher mandatory minimums until August 3, 2015, when the five-year general statute of limitations would run. Congress could not have intended this result. By granting the Sentencing Commission the emergency authority to amend the Sentencing Guidelines by November 1, 2010, Congress necessarily indicated its intent for the FSA to apply immediately. To ask district courts to consider the date the offense was committed to determine the statutory minimum, but the date of sentencing to determine the guidelines range, would lead to an incongruous result that is inconsistent with Congressional intent. *See United States v. Rutherford*, 442 U.S. 544, 552 (1979) (explaining that when interpreting statutes, exceptions may be implied "where essential to prevent 'absurd results' or

10

consequences obviously at variance with the policy of the enactment as a whole"). What is more, such an interpretation of the FSA would run afoul of the policies motivating its enactment and render ineffectual Congress's express directive to the Sentencing Commission. *See* FSA, Preamble & § 8, Pub. L. No. 111-220 (stating that "the United States Sentencing Commission shall . . . make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary *to achieve consistency with . . . applicable law*" (emphasis added)).

Moreover, with respect to § 109, we have stated in a somewhat similar context that "[t]he general rule is that a new statute should apply to cases pending on the date of its enactment unless manifest injustice would result or there is a statutory directive or legislative history to the contrary." *United States v. Kolter*, 849 F.2d 541, 543 (11th Cir. 1988) (citing, among other cases, *Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696 (1974)). Congress stated that it passed the FSA to "restore fairness to Federal cocaine sentencing." Preamble, FSA, Pub. L. No. 111-220. As one district court aptly stated in an opinion thoroughly discussing this issue, "what possible reason could there be to want judges to *continue* to impose new sentences that are not 'fair' over the next five years while the statute of limitations runs?" *Douglas*, 746 F. Supp. 2d at 229.

The necessary inference is that the will of Congress was for the FSA to halt unfair sentencing practices immediately.  *See Great N. Ry. Co.*, 208 U.S. at 465. We therefore hold that the general savings statute cannot bar application of the FSA to sentencings conducted after its August 3, 2010, enactment.  Accordingly, we remand Vera Rojas's case to the district court for re-sentencing consistent with this opinion.

**REVERSED AND REMANDED.**