NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 2, 2011
Decided September 1, 2011

**Before**

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 10-3474

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 09-10007-001 |
| TERRILL A. RICKMON, SR., *Defendant-Appellant.* | Michael M. Mihm, *Judge.* |

**O R D E R**

Terrill Rickmon confessed to selling crack cocaine after police in Peoria, Illinois, executed a search warrant at his girlfriend's apartment and found him there with a distributable quantity of the drug. He pled guilty to possession with intent to distribute, and was sentenced to 120 months in prison, the statutory minimum given the amount of crack. On appeal, Rickmon argues that the district court should have (1) ordered the government to disclose the identity of the informant whose information led to the search warrant; (2) granted him a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978); and (3) suppressed his confession. He also argues that the court should have retroactively applied the Fair Sentencing Act of 2010, Pub. L. No. 111–220, 124 Stat. 2372. His first three contentions lack merit, and his FSA claim is foreclosed under existing circuit precedent. Accordingly, we affirm the judgment.

I.        *Factual and Procedural Background*

On January 14, 2009, Peoria police obtained a warrant to search the apartment of Rickmon's girlfriend. Officer Erin Barisch had prepared a supporting affidavit recounting that on January 13 he was told by a reliable informant that the informant had been in the apartment three times in the past 30 days, including once in the previous 72 hours, and each time saw Rickmon with crack. The informant, Barisch continued, had said that Rickmon lived at the apartment with his girlfriend and routinely sold crack from that address. The informant also described Rickmon and identified his picture in a photo array. Barisch explained that he had used police records to verify that Rickmon's girlfriend lived at the address given by the informant. He also noted that the informant had provided reliable information in the past.

When Officer Barisch and other officers executed the warrant on January 15, they found 18.9 grams of crack, $4,651 in currency, a digital scale, plastic sandwich bags, mail addressed to Rickmon, a .45-caliber handgun, and ammunition. Rickmon was present, and after *Miranda* warnings he confessed that the crack was his and that he had been selling it. He was taken to police headquarters where, after signing a written *Miranda* waiver, he again confessed that the crack belonged to him. Federal authorities took over the matter, and Rickmon was indicted for possession of crack with intent to distribute, 21 U.S.C. § 841(a)(1), and possession of a firearm by a felon, 18 U.S.C. § 922(g)(1). Because the crack amount was at least five grams, Rickmon faced a minimum of ten years in prison under existing law, 21 U.S.C. § 841(b)(1)(B)(iii) (2006 & Supp. IV 2010).

Rickmon moved, through retained counsel, to compel the government to disclose the identity of the informant. He argued, citing *Roviaro v. United States*, 353 U.S. 53, 62 (1957), that the informant's identity was necessary to prepare his defense. Rickmon asserted that he was not a resident of the apartment and that the informant was "the only person who can put this defendant in possession of any crack cocaine" seized during the search. Disclosure, said defendant, "would be relevant and helpful to defenses such as entrapment, lack of intent, or no involvement" in the charged crime. Rickmon said nothing, however, about wanting the informant's identity to pursue a motion to suppress. In its written response, the government countered that the informant was only a "tipster" who gave information to the police but was not present during the search and "had no role in 'setting-up' the defendant." Thus, the government argued, Rickmon had not articulated a sufficient need for the informant's identity.

After filing that motion, Rickmon changed lawyers. The *Roviaro* motion was still pending when the new lawyer moved to suppress the physical evidence and Rickmon's confession on the ground that at least part of the information supplied by the informant was demonstrably false. In his affidavit, Officer Barisch said that he was told by the informant on January 13 that the informant had seen Rickmon in his girlfriend's apartment with crack in the

previous 72 hours, meaning no earlier than January 10. Submitted with Rickmon's motion to suppress were affidavits from his girlfriend, who said that she ordered Rickmon to leave her apartment on January 9 after a fight and did not let him return until a few hours before the police arrived on January 15, and from another woman who confirmed that Rickmon was with her continuously from the night of January 9 until she drove him to his girlfriend's apartment on January 15. Rickmon argued that the informant had lied, that the false information was material to the determination of probable cause, and that Barisch "either knew of or was deliberately indifferent to" the informant's lie.

The government, having previously described the informant as someone who "had no role in 'setting-up' the defendant," responded to the suppression motion by asserting that, in fact, the informant had entered the apartment on January 13 to make a controlled buy from Rickmon and returned with crack allegedly purchased from him. That detail would undermine any contention that the informant had lied about being in the apartment in the previous 72 hours, and the prosecutor explained that Barisch had omitted the information from his affidavit to protect the informant's identity. In any event, the government argued, Rickmon's speculative accusation that Barisch knew or should have known about the informant's alleged untruth was not enough to require further inquiry under *Franks*.

The district court heard both motions together. As for the *Roviaro* motion, Rickmon no longer argued that the informant's identity was necessary to pursue a defense to the indictment. Instead, Rickmon focused exclusively on his belief that disclosure would aid his motion to suppress because the credibility of the informant was in doubt. The government continued to insist that, despite the controlled buy, the informant was no more than a tipster. The district court denied the motion to suppress, noting that the government had not suggested that it would call the informant to testify at trial or get into events occurring before Rickmon was caught with crack at the apartment on January 15. The court did not issue a written decision.

As for the motion to suppress the fruits of the search, the district court agreed with the government that Rickmon had not made a sufficient preliminary showing to warrant a *Franks* inquiry. At the hearing, defense counsel repeated his contention that Officer Barisch had inaccurately stated that Rickmon was seen in the apartment with cocaine sometime during the 72 hours before January 13, but counsel could not articulate a basis for suggesting that Barisch knew or suspected that the informant had lied to him. Essentially, Rickmon's lawyer returned to the subject of his *Roviaro* motion and asserted that he needed to know the identity of the informant to make the preliminary showing that was lacking. The district court, having already denied the *Roviaro* motion, concluded that there was "nothing in the record" from which to conclude that Barisch had known about any lie told by the informant. The court emphasized that Barisch's affidavit demonstrated that the officer had made a good-faith effort to

corroborate the informant's information before seeking the warrant. The court did not issue a written decision.

During this motions hearing, Rickmon also asserted an independent basis for suppressing his confession. He claimed – for the first time, but without objection from the government – that the confession was coerced. Rickmon testified that Officer Barisch had threatened to arrest his girlfriend and told him he would lose custody of his son if he did not confess that the crack in the apartment was his. Rickmon also testified that he did not remember receiving *Miranda* warnings and did not read the *Miranda* waiver he signed at the police station before repeating his confession. Barisch testified and contradicted Rickmon's testimony. The district court found Rickmon's testimony not credible and denied the motion. The judge explained on the record that he believed Barisch's testimony that *Miranda* warnings were given to Rickmon at the apartment, that those warnings were repeated at the police station, that the *Miranda* waiver was reviewed with Rickmon before he was allowed to sign it, and that Rickmon was never threatened. The court also noted that Rickmon did not deny receiving the *Miranda* warnings or signing the waiver; he testified only that he was not paying attention. The court did not issue a written decision on the motion.

Rickmon then pled guilty to the drug count but not the gun charge. Although the parties characterized his guilty plea as "open" (in its brief the government calls it "blind"), there was an oral plea agreement: the prosecutor acknowledged that the gun charge would be dismissed at sentencing if Rickmon pled guilty to the drug count, and also acquiesced to a conditional guilty plea that would allow Rickmon to challenge on appeal the rulings on his *Roviaro* motion and his motions to suppress. After the plea colloquy, Rickmon submitted a written reservation of issues for appeal, explaining that he was reserving the right to appeal the denial of his *Roviaro* and suppression motions.

A probation officer prepared a presentence investigation report, initially calculating a guideline imprisonment range of 92 to 115 months, before noting that Rickmon was subject to a statutory minimum of 120 months under the version of § 841(b)(1)(B)(iii) in effect before its amendment by the FSA. Rickmon filed a memorandum arguing that he should be sentenced under the recently enacted FSA, which, if applied, would have eliminated the mandatory minimum. The district court concluded that the FSA is not retroactive, and sentenced Rickmon to the mandatory minimum.

II.      *Analysis*

As an initial matter, we note that we may review the issues presented despite the parties' insistence that Rickmon entered an "open" or "blind" guilty plea. An open guilty plea is unconditional, and an unconditional guilty plea waives all nonjurisdictional defects,

including the claims Rickmon makes here. See *United States v. Phillips*, 645 F.3d 859, 862 (7th Cir. 2011); *United States v. Coil*, 442 F.3d 912, 914 (5th Cir. 2006); *United States v. Galbraith*, 200 F.3d 1006, 1010 (7th Cir. 2000). As noted, however, Rickmon's guilty plea was conditional, even though the plea agreement was not formalized in a written instrument. Federal Rule of Criminal Procedure 11(a)(2) does require that a conditional plea agreement be in writing, but the writing requirement is not jurisdictional. An oral agreement will suffice if: (1) the government does not challenge the defendant's characterization of the plea as conditional; (2) something in the record, such as the transcript from the plea hearing, shows that the government agreed to a conditional plea and the district court accepted it; and (3) a decision on the issue will resolve the case. See *United States v. Kingcade*, 562 F.3d 794, 797 (7th Cir. 2009); *United States v. Elizalde-Adame*, 262 F.3d 637, 639 (7th Cir. 2001); *United States v. Galbraith*, 200 F.3d 1006, 1010 (7th Cir. 2000). The district court noted Rickmon's reservations at the change-of-plea hearing without objection from the prosecutor, and on appeal the government concedes that Rickmon reserved the right to challenge on appeal the rulings on his *Roviaro* motion and his motions to suppress.

On appeal Rickmon first argues, through new counsel appointed by this court, that the district judge erred in rejecting his motion to compel the government to disclose the informant's identity. Rickmon maintains, as he did at the motions hearing, that he needed the informant's identity so that he could establish that Officer Barisch knew that his affidavit included false information. Rickmon argues that knowing the identity of the informant was essential to a fair determination on his motion to suppress and that a proper balancing of the government's interest in keeping informants confidential against his right to prepare his defense weighed in favor of disclosing the informant's identity.

We review the decision for abuse of discretion, and will uphold the ruling if a reasonable person could agree with the district court's decision. *United States v. Wilburn*, 581 F.3d 618, 623 (7th Cir. 2009). To compel disclosure of the informant's identity, Rickmon had to establish that his need for the identity outweighed the public interest in protecting the flow of information to police. See *Roviaro*, 353 U.S. at 62; *Wilburn*, 581 F.3d at 623. One factor to consider is the role the informant played in the investigation. If the informant was no more than a "tipster" who provided information to establish the foundation for the search warrant, disclosure is not required. See *Wilburn*, 581 F.3d at 623; *United States v. Harris*, 531 F.3d 507, 515 (7th Cir. 2008).

The district court did not abuse its discretion by denying Rickmon's motion to disclose the informant's identity. Although the informant participated in a controlled buy, the informant was nonetheless only a "tipster" because neither the search warrant nor the prosecution was based on this controlled buy. See *Wilburn*, 581 F.3d at 623. Moreover, although disclosure of an informant's identity at trial may be required if the information would

be relevant and helpful to the defendant, the Due Process Clause "has never been held to require the disclosure of an informant's identity at a suppression hearing." *United States v. Raddatz*, 447 U.S. 667, 679 (1980); see *United States v. Tzannos*, 460 F.3d 128, 140-41 (1st Cir. 2006); *United States v. Brown*, 3 F.3d 673, 679 (3rd Cir. 1993); *United States v. McDonald*, 723 F.2d 1288, 1297 (7th Cir. 1983).

Next, Rickmon argues that the district court erred in denying him a *Franks* hearing. He reiterates his contention that the informant gave Officer Barisch false information about when Rickmon was at the apartment. We review the *Franks* ruling for clear error. *United States v. Schultz*, 586 F.3d 526, 531 (7th Cir. 2009).

To obtain a *Franks* hearing, Rickmon had to make a substantial preliminary showing that Barisch obtained the search warrant by intentionally or recklessly including materially false information in the supporting affidavit. See *Franks*, 438 U.S. at 155-56; *United States v. McDuffy*, 636 F.3d 361, 363 (7th Cir. 2011). Rickmon had to come forward with evidence suggesting either that Barisch intentionally relied on false information or else that he disregarded obvious warning signs about the truth of the information he submitted. *United States v. Robinson*, 546 F.3d 884, 889 (7th Cir. 2008); *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001). Here, all Rickmon did was present affidavits from two persons who corroborated his contention that he was not in his girlfriend's apartment during one of the three times the informant stated he had seen Rickmon there. Rickmon does not argue that Officer Barisch even had access to this information when he sought the warrant, nor does he challenge the district court's finding that Barisch made a good-faith effort to corroborate the informant's account before seeking a warrant.

Essentially, Rickmon's argument reduces to a vague contention, without citation to any authority, that he should have been held to a lower burden for obtaining a *Franks* hearing because he did not have "the identity of the informant to test the truthfulness of the search warrant affidavit." But Rickmon does not challenge the district court's conclusion that he made no showing that Officer Barisch knew or should have known that his affidavit includes false information, if indeed it does. Rickmon only speculated that Barisch must have known that the informant was lying. Because he did nothing more, it was not error to deny his request for a *Franks* hearing. See *United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009); *United States v. Robinson*, 546 F.3d 884, 889 (7th Cir. 2008).

Next, Rickmon challenges the district court's refusal to suppress statements he made during the search of the apartment and during the interview at the police station. But, again, he does not address the district court's finding that his testimony about being threatened was not credible, which is fatal to his claim. See *Maher*, 547 F.3d at 821. Rickmon simply repeats

that his confession was involuntary, that Barisch coerced him, that he does not remember receiving the *Miranda* warnings, and that he did not read the *Miranda* waiver.

Even ignoring the waiver, Rickmon's argument has no merit. We will not overturn a credibility determination unless it is completely without foundation. See *United States v. Norris*, 640 F.3d 295, 297 n.1, 301 (7th Cir. 2011). Here, the district court looked at the totality of the circumstances, including the fact that Rickmon raised the issue of coercion for the first time at the hearing, and found that his testimony was not credible. Instead the court credited Barisch's testimony that he read Rickmon his *Miranda* warnings, explained the *Miranda* waiver to him, and never made any threats against Rickmon's girlfriend or son. Rickmon has given us no basis for questioning the credibility finding.

Last, Rickmon argues that the district court erred by not sentencing him under the Fair Sentencing Act. This contention is foreclosed by circuit precedent which holds that the FSA applies only to defendants who are sentenced based on criminal conduct that occurred after August 3, 2010, when the Act was signed into law. See *United States v. Fisher*, 635 F.3d 336, 340 (7th Cir. 2011), reh'g and reh'g en banc denied, 646 F.3d 429 (7th Cir. 2011); *United States v. Bell*, 624 F.3d 803, 814 (7th Cir. 2010); see also *United States v. Holcomb*, Nos. 11-1558, 11-1559, 11-1586 & 11-1758 (7th Cir. July 7, 2011) (unpublished order) (applying holding from *Fisher* that FSA does not apply retroactively), reh'g en banc denied, *United States v. Holcomb*, Nos. 11-1558, 11-1559, 11-1586 & 11-1758, slip op. at 1 (7th Cir. Aug. 24, 2011) (recognizing circuit split but declining by 5-to-5 vote to rehear issue of retroactivity of FSA).

AFFIRMED.